IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH E. GAXIOLA,<br><br>             Plaintiff,<br><br>   v.<br><br>DR. M. SAYRE; F.N.P. SUE RISENHOOVER; DR. C. WILLIAMS; R.N. K. VAIL,<br><br>             Defendants. | NO. C 13-1989 WHA (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(Docket No. 37) |

## INTRODUCTION

This is a civil rights action filed under 42 U.S.C. 1983 by a state prisoner proceeding pro se. Plaintiff claims that defendants Dr. M. Sayre, F.N.P. Sue Risenhoover, Dr. C. Williams, and R.N. K. Vail, all employees of the California prison, violated his Eighth Amendment rights by failing to provide adequate medical care when he was at Pelican Bay State Prison ("PBSP"). Defendants move for summary judgment, plaintiff has opposed the motion, and defendants have replied. For the reasons set out below, defendants' motion is **GRANTED**.

## STATEMENT

The following facts are not in dispute, unless otherwise noted.

In 2008, plaintiff fell down in his prison cell and was escorted to an outside hospital, where he received treatment for a closed head injury (Compl. 8; Defs. Mot. Summ. J. ("MSJ") Ex. N). According to plaintiff, he suffered a seizure in this incident (Compl. 8). However, the examining doctor assessed the incident as a "mechanical fall" because a CT scan and an EKG did not show that a seizure had occurred (MSJ, Ex. N at 3). A doctor later evaluated plaintiff

further for indications of a seizure, but he showed normal endocrine, neurological and cardiac systems that did not indicate seizure activity (MSJ, Ex. O at 3). In November of 2008, plaintiff was seen by a neurologist for further evaluation, but he showed normal results from MRI scans of his brain and spine (MSJ, Ex. CC at 18-19). The neurologist recommended that plaintiff receive an EEG, which was performed in December and produced normal results (MSJ, Ex. M).

In April 2009, plaintiff was found lying on his cell floor with a cut on his head (Sayre Decl. at 4). Plaintiff was then transported to an emergency room for treatment, and en route he had a seizure in the ambulance (*id.* 5). Plaintiff was prescribed anti-seizure medication and admitted into the PBSP's treatment center by defendant R.N. Risenhoover (MSJ, Ex. Q). Later that month, plaintiff told defendant Dr. Williams that he had stopped taking the medication due to an allergic reaction, so Williams prescribed a different anti-seizure medication to which plaintiff reported no allergic reactions (MSJ, Ex. S). When plaintiff complained to Williams of chest pain in June, Williams ordered a treadmill stress test, but the test reported no abnormalities (*ibid*). In December, the Medical Authorization Review ("MAR") Committee, chaired by defendant Sayre, elected to discontinue plaintiff's anti-seizure medication after a "thorough review of the record" (*id*. at 18).

In early 2010, plaintiff received a padded helmet in order to protect his head in case of another seizure (Compl. 13). In June 2010, plaintiff reported to defendant R.N. Vail that he had experienced a seizure and had stopped wearing his helmet because it was too big, and defendant Vail instructed him to wear the helmet in order to protect himself (MSJ, Ex. T at 5). Plaintiff was then examined by defendant Williams, who requested a psychological consult based on her suspicions that plaintiff's seizures were psychological rather than physiological (*id.* 6).

In October 2010, plaintiff complained of headaches and photosensitivity to defendant Vail, who prescribed him Ibuprofen and referred him to an optometrist in order to ascertain the cause of his headaches (*id.* 12). On November 5, 2010, defendant Vail examined plaintiff again and he was prescribed Tylenol for his headaches by Dr. Adam, who is not a defendant (*id.* 15). Later that day, plaintiff reported having another seizure (Compl. 14). A PBSP doctor prescribed plaintiff more anti-seizure medication (MSJ, Ex. T at 17). At that point, defendant

1  Williams elected to set up a chronic care checkup for plaintiff, whereupon he would be
2  examined every six months to monitor any seizure activity (MSJ, Ex. T at 17).

3       In 2011, plaintiff complained to defendant Williams about his headaches, who
4  prescribed Tylenol and Indocin (MSJ, Ex. U at 1-2). In addition, defendant Williams ordered
5  sinus films in an attempt to pinpoint the source of plaintiff's headaches (MSJ, Ex. U at 2).
6  Throughout 2011, plaintiff intermittently reported seizures and headaches to prison medical
7  staff, who consistently renewed his anti-seizure and headache medications (MSJ, Ex. U).
8  Plaintiff was also examined by optometrists, who attempted to diagnose the cause of his
9  headaches several times and gave plaintiff medical advice on how to manage his headaches and
10 light sensitivity (MSJ, Ex. U at 9, 12). In August, he was prescribed new medication for his
11 headaches, and offered bifocals by the optometry clinic, which he declined (*id.* 17-18).

12      In 2012 and 2013, plaintiff began reporting an improvement in his headaches (MSJ, Ex.
13 V at 1). Throughout 2012 and 2013, plaintiff was regularly seen by doctors and prescribed
14 medication for his headaches and to prevent seizures (MSJ, Ex. V; Ex. W). Plaintiff was also
15 seen by the optometry clinic several times and eventually given glasses (MSJ, Ex. W). Plaintiff
16 last reported seizures in April 2013, when he told medical staff he had experienced two seizures
17 in the prior six months (Sayre Decl. 12).

18      Plaintiff claims that defendants violated the Eighth Amendment and were deliberately
19 indifferent to his serious medical needs.

## ANALYSIS

A. STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.

The moving party for summary judgment bears the initial burden of identifying those

3

1 portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine
2 issue of material fact. *Celotex Corp.v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving
3 party has met this burden of production, the nonmoving party must go beyond the pleadings
4 and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine
5 issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue
6 of material fact, the moving party wins. *Ibid*.

B. ANALYSIS

Plaintiff claims that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment because they inadequately treated his seizure disorder and chronic headaches. Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *See ibid.* A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Neither negligence nor gross negligence will constitute deliberate indifference. *Id*. at 835-36 & n.4 (1994).

plaintiff claims defendants were deliberately indifferent to his medical needs by not diagnosing his seizure disorder until 2009 and then treating him poorly following the diagnosis; his seizure medication was improperly discontinued in 2009; and he was denied proper treatment for his headaches and photosensitivity issues.

First, the evidence establishes that defendants were not deliberately indifferent to treating his seizures prior to and following his first observed seizure in 2009. Plaintiff asserts that he had a seizure disorder in 2008, but the medical records show no medical evidence that he suffered from seizures until 2009. After he fell in 2008, a doctor at Sutter Coast Hospital assessed plaintiff's fall as a "mechanical fall" because his CT scan was negative (MSJ, Ex. N at 3). Plaintiff was seen by a number of doctors and a neurologist, and he received extensive further testing, including MRIs, an EEG, and an evaluation of his endocrine, neurological and

4

1  cardiac systems, none of which showed evidence of a seizure disorder (MSJ, Ex. N).  Plaintiff
2  presents no evidence that his tests were misread, that there was a need to perform additional
3  tests, or that a reasonable doctor would have had any basis for diagnosing him with a seizure
4  disorder prior the incident in 2009, when he was seen suffering a seizure by medical personnel.

6  Once this seizure was observed, moreover, he was promptly diagnosed with and
7  prescribed medication for a seizure disorder (MSJ, Ex. Q at 4).  Plaintiff was prescribed
8  Dilantin for his seizures, but was later prescribed Tegretol by defendant Williams when he
9  claimed to be allergic to Dilantin (MSJ, Ex. S).  Since 2009, plaintiff was seen regularly by
10 defendant Dr. Williams and other medical staff in order to monitor his condition (*ibid*).  When
11 plaintiff complained to Williams of chest pain, Williams ordered a treadmill stress test, but the
12 test reported no abnormalities (*ibid*).  Plaintiff's last reported seizure was in April 2013, when
13 he told medical staff he had experienced two seizures in the prior six months (Sayre Decl. 12).
14 He continues to receive anti-seizure medication and regular appointments with doctors.  There
15 is no evidence that the medication, tests, and schedule of evaluations defendants provided were
16 not medically appropriate for his condition.  As a result, there is no genuine issue of material
17 fact as to whether any defendant was deliberately indifferent to plaintiff's need for treatment for
18 his seizures either prior to or following his seizure diagnosis in 2009.

19 Second, the evidence establishes that defendant Sayre and the MAR Committee did not
20 act with deliberate indifference when by temporarily discontinuing plaintiff's seizure
21 medication, between December 2009 and November 2010.  The decision was based on a review
22 of plaintiff's medical records, the fact that the plaintiff had not experienced seizures in eight
23 months, had normal EEGs, and had previously been cleared by a neurologist (MSJ, Ex. S at 18;
24 Sayre Decl. at 6).  Plaintiff presents no evidence that under these circumstances, it was not
25 medically appropriate to discontinue his seizure medication.  His disagreement with medical
26 professionals on this issue, without more, does not create a triable issue of fact as to whether it
27 was medically necessary to continue his anti-seizure medication at that time.  *See Franklin v.*
28 *Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) ("A difference of opinion between a prisoner-

5

patient and prison medical authorities regarding treatment does not give rise to a Section 1983 claim.").

Third, the evidence also establishes that defendants were not deliberately indifferent to plaintiff's medical needs when they treated his chronic headaches.  When plaintiff first complained of headaches, he was promptly prescribed medication and referred to an optometry clinic (MSJ, Ex. T).  Plaintiff was tested by both medical doctors and optometrists in order to diagnose the cause of his headaches (*ibid*).  Furthermore, plaintiff was offered glasses in order to curb his photosensitivity, and was routinely tested by optometrists from 2011 onwards (MSJ Ex. U; Ex. V).  Plaintiff was also prescribed headache medication several times and given instructions for how to treat his headaches (MSJ, Ex. U).  Medical records clearly indicate that plaintiff had each of his complaints addressed and tested.  Plaintiff contends that he "still continues to be denied treatment for his photo-sensitivity," but there is no evidence supporting this claim given the number of times he has been seen, tested, and prescribed glasses and headache medication by both doctors and optometrists (Resp. to MSJ at 19; MSJ, Ex. V, Ex. W).  Plaintiff shows no evidence to indicate that he received inadequate medical treatment for, let alone that there was deliberate indifference to, his headaches.

Because there is no genuine issue of material fact as to whether defendants were deliberately indifferent to plaintiff's medical needs, defendants are entitled to summary judgment on plaintiff's Eighth Amendment claims.  Defendants' alternate arguments based on exhaustion and untimeliness need not be addressed.

## CONCLUSION

Defendants' motion for summary judgment is **GRANTED**.  The clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: July  6 , 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE